FILED

05/24/2017

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 1, 2017

**IN RE MARTESE P.**

**Appeal from the Juvenile Court for Madison County**
**No. 55-50096    Christy R. Little, Judge**

_____

**No. W2016-01922-COA-R3-PT**
_____

This appeal arises from the termination of Mother's parental rights. The child was removed from Mother's custody in November 2013, when the child was twelve months old, after Mother and the child tested positive for drugs. On the petition of the Department of Children's Services, the juvenile court adjudicated the child dependent and neglected based on the finding that Mother committed severe child abuse as defined in Tenn. Code Ann. § 37-1-102. In September 2014, DCS placed the child in the custody of Petitioners. One year later, Petitioners filed a petition to terminate Mother's parental rights. The juvenile court terminated Mother's parental rights on the ground of severe child abuse and the finding that termination of her rights was in the child's best interest. Mother appealed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which THOMAS R. FRIERSON, II, and BRANDON O. GIBSON, JJ., joined.

Lee R. Sparks, Jackson, Tennessee, for the appellant, Kelsey K.[1]

Joseph T. Howell, Jackson, Tennessee, for the appellee, James C. and Sarah C.

**OPINION**

At issue in this case are the parental rights of Kelsey K. ("Mother") to her minor child, Martese P., born November 2012.

_____

[1] This court has a policy of protecting the identity of children in parental termination cases by initializing the last name of the parties.

In September 2013, Mother was arrested on felony drug charges. In November 2013, on Martese's first birthday, Mother and Martese submitted to a hair-follicle drug screen. The results of this screen were positive for cocaine for both Mother and the child. On November 18, 2013, the Department of Children's Services ("DCS") filed a petition alleging that Martese was a dependent and neglected child and seeking emergency removal of Martese from Mother's custody. Thereafter, the juvenile court granted DCS temporary custody of Martese pending an adjudicatory hearing.

A dependency and neglect hearing was held on October 20, 2014. Based on the evidence presented, the juvenile court declared Martese dependent and neglected based on the finding that Martese was a victim of severe child abuse, as defined in Tenn. Code Ann. § 37-1-102, and placed Martese in DCS custody. Mother appealed the juvenile court's finding that she subjected Martese to severe child abuse. Following a de novo hearing, the circuit court upheld the findings of the juvenile court.

In August 2014, DCS placed Martese in the custody of James C. and Sarah C. ("Petitioners"), where he has since remained. On November 10, 2015, Petitioners filed a petition to terminate the parental rights of Mother.[2]

The case was tried on August 9, 2016, during which the court heard testimony from several witnesses, including Petitioners, two DCS staff members, and Mother. Petitioners also introduced numerous exhibits into evidence, including the juvenile court's order finding Martese was a victim of severe child abuse by Mother.

Petitioner James C. testified that DCS placed Martese with him and his wife Sarah C. in September of 2014. James stated that he is gainfully employed and he and his wife are capable of providing for Martese. He also testified that they had developed a loving relationship with Martese and had taken steps to advance his emotional and educational development, such as taking Martese to see a therapist to treat his learning deficiencies. He also explained that his mother, a retired school teacher, was teaching Martese using the Montessori method. James also stated that, although Mother had sent some clothes and toys to Martese on a few occasions, she had not provided any financial support to Martese while he had been in Petitioners' custody.

Sarah C. reiterated much of her husband's testimony and also stated that she had grown to love Martese as her own. Additionally, she testified that Petitioners intended to adopt Martese if the petition to terminate parental rights was granted.

---

[2] The petition also addressed the parental rights of the child's biological father, Christopher P. ("Father"). A hearing with regard to Father's rights was held on May 10, 2015, which Father failed to attend. Following the hearing, the juvenile court terminated Father's parental rights. Father did not appeal this decision; thus, his rights are not at issue in this appeal.

Tracy Eaton, a DCS caseworker, testified that Petitioners' home was a friendly and wholesome environment in which Martese seemed comfortable and content. She stated that Petitioners were taking good care of Martese and that he seemed to be thriving in their custody. She testified that Petitioners were financially able to provide for Martese and that, in her opinion, it was in the best interests of Martese to remain with Petitioners.

Roger Webster, team leader for DCS, testified that Mother was initially awarded supervised visitation after Martese was removed from her care; however, those visits had to be suspended "due to a couple of incidents where the police had to be called." Mr. Webster stated that, prior to suspension of visitation, Mother was late for and cancelled several appointments for her visitation. Further, Mr. Webster stated that during the time DCS had the case (from November 2013 to June 2015), Mother consistently tested positive for drugs.

Mother testified that, following Martese's removal, she met with DCS and agreed to complete parenting classes, alcohol and drug classes, and anger management, which she did. Mother testified that she had been drug free for a year and a half, but acknowledged that she tested positive for marijuana, cocaine, and opiates in January 2015. Mother testified that, in addition to Martese, she had another child, Jonathan, who was currently in her care. Mother stated that she was unemployed and seeking disability; nevertheless, she maintained that she was able to provide for Jonathan and Martese.

Following the trial, the juvenile court granted the petition to terminate Mother's parental rights. The court ruled that the ground of severe child abuse, as defined by Tenn. Code Ann. § 37-1-102, had been established. The court also found that termination was in the best interest of Martese pursuant to Tenn. Code Ann. § 36-1-113(i). In pertinent part, the court found that Mother had not fostered a meaningful relationship with Martese, that Martese was currently in a loving and nurturing environment, that a change of caretakers and physical environment would likely have a negative effect on Martese's wellbeing, and that Martese had established a strong bond with Petitioners.

Mother appealed, raising the following issues:

1.   Whether the court's prior determination of severe child abuse as defined in Tenn. Code Ann. § 37-1-102 is sufficient to warrant termination of [Mother's] parental rights when [Mother] has complied with all proscriptions of the Department of Children's Services in seeking reunification with her child.

2.   Whether the court's termination of [Mother's] parental rights is in the best interests of the child.

STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children under both the United States and Tennessee Constitutions. *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002) (citing *Stanley v. Illinois*, 405 U.S. 645, 651-52 (1972)). This right is superior to the claims of other persons and the government, but it is not absolute; the state may terminate a person's parental rights under certain circumstances. *In re Heaven L.F.*, 311 S.W.3d 435, 438 (Tenn. Ct. App. 2010); *Santosky v. Kramer*, 455 U.S. 745, 747-48 (1982).

"To terminate parental rights, a trial court must determine by clear and convincing evidence not only the existence of at least one of the statutory grounds for termination but also that termination is in the child's best interest." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). Clear and convincing evidence is "evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re Adoption of Angela E.*, 402 S.W.3d 636, 640 (Tenn. 2013) (quoting *In re Valentine*, 79 S.W.3d at 546)).

We review findings of fact made by the trial court de novo upon the record "accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." *In re F.R.R., III*, 193 S.W.3d at 530 (quoting Tenn. R. App. P. 13(d)). However, because of the heightened burden of proof in termination proceedings, this court must make its own determination "as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights." *In re Carrington H.*, 483 S.W.3d 507, 524 (Tenn. 2016); *In re Bernard T.*, 319 S.W.3d 586, 596-97 (Tenn. 2010). The trial court's ruling regarding whether the evidence sufficiently supported termination is a conclusion of law, which we review de novo with no presumption of correctness. *See In re Carrington H.*, 483 S.W.3d at 524. As in other appeals, all other questions of law in a parental termination case are reviewed de novo with no presumption of correctness. *Id.*

## ANALYSIS

### I. GROUNDS FOR TERMINATION

In order to terminate the parental rights of a biological parent, a petitioner must first prove, by clear and convincing evidence, at least one of the listed grounds for termination. *In re Kaliyah S.*, 455 S.W.3d 533, 552 (Tenn. 2015); Tenn. Code Ann. § 36-1-113(g). Under Tenn. Code Ann. § 36-1-113(g)(4), a ground for termination exists when "the parent is found to have committed severe child abuse as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate

parental rights to have committed severe child abuse against the child who is the subject of the petition." Tenn. Code Ann. § 36-1-113(g)(4). "Severe child abuse" includes, *inter alia*, "[t]he knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death[.]" Tenn. Code Ann. § 37-1-102(b)(21)(A)(i).

In this case, the juvenile court initially removed Martese from Mother's custody following a dependency and neglect hearing on October 20, 2014. In its dependency and neglect order, which was entered on December 16, 2014, the court specifically found that Martese was the victim of severe child abuse as defined in Tenn. Code Ann. § 37-1-102. Mother appealed this order to the circuit court, and the circuit court affirmed the finding of severe abuse. Mother did not appeal this decision; thus, the ruling became a final, non-appealable judgment.[3]

Thereafter, Petitioners filed a petition to terminate Mother's parental rights in the juvenile court. The juvenile court found that the evidence clearly and convincingly established grounds for termination based on severe child abuse. In so doing, the juvenile court specifically cited its prior finding of severe child abuse at the October 2014 dependency and neglect hearing, which was memorialized in the court's December 2014 order. Additionally, the court found that termination of Mother's parental rights was in Martese's best interest. Based on these findings, the court terminated Mother's parental rights.

On appeal, Mother concedes that a prior finding of severe abuse can serve as a basis for termination of parental rights. Nevertheless, she argues that termination of her parental rights was not warranted, because she completed the requirements imposed on her by DCS in order to accomplish reunification with her child, but was not afforded the opportunity to reunify. For the following reasons, we find this argument to be unpersuasive.

A finding of "severe child abuse" in an underlying dependency and neglect action serves the following two purposes:

> First, the finding of "severe child abuse" constitutes an independent ground for the termination of parental rights. *See* Tenn. Code Ann. § 36-1-113(g)(4). Second, a finding of "severe child abuse," even if made during a dependency and neglect action, relieves the Tennessee Department of Children's Services of its obligation to preserve and reunify the child with the parents. Tenn. Code Ann. § 37-1-166(g)(4)(A).

---

[3] As a result of this finding, DCS was relieved of the obligation to make reasonable efforts to reunify Mother and child. *See* Tenn. Code Ann. § 37-1-166(g)(4)(A).

*In re Serenity S.*, No. W2014-00080-COA-R3-PT, 2014 WL 6612571, at *5 (Tenn. Ct. App. Nov. 24, 2014); *see also In re Dakota C.R.*, 404 S.W.3d 484, 497 (Tenn. Ct. App. 2012).

Here, Mother was found to have committed severe child abuse in the juvenile court's December 16, 2014 order, which is a final and non-appealable judgment. Therefore, under the doctrine of res judicata, Mother is precluded from re-litigating this issue. *See In re Dakota C.R.*, 404 S.W.3d at 497.[4] This finding not only established grounds for the termination of Mother's parental rights, but also relieved DCS from its obligation to make reasonable efforts to reunify Mother and Martese. Accordingly, Mother's argument regarding reunification is without merit.

Therefore, the evidence clearly and convincingly establishes grounds for terminating Mother's parental rights based on Tenn. Code Ann. § 36-1-113(g)(4).

## II. BEST INTERESTS OF THE CHILD

If one of the statutory grounds for termination is proven by clear and convincing evidence, a parent's rights may be terminated if termination is in the best interests of the child. *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003).

The legislature has identified nine statutory factors for the court to consider in conducting a best-interests analysis, *see* Tenn. Code Ann. § 36-1-113(i); however, this list is not exhaustive, and the court need not find the existence of every factor before it may conclude that terminating an individual's parental rights is in the best interests of a child. *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). Instead, "[t]he relevancy and weight to be given each factor depends on the unique facts of each case." *In re Audrey S.*, 182 S.W.3d 838, 878 (Tenn. Ct. App. 2005). Further, in considering a petition to terminate parental rights, the court is called to make a determination of the child's best interests from the perspective of the child rather than the parent. *In re Heaven L.F.*, 311 S.W.3d at 441.

One of the statutory factors to be considered is the effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological, and medical condition. Tenn. Code Ann. § 36-1-113(i)(5). Here, the juvenile court found that Martese is in a loving and nurturing environment, that Martese has established a bond with Petitioners, and that Petitioners are willing to adopt Martese and provide for his

---

[4] The doctrine of res judicata provides that, "an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions and facts in issue as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction." *In re Dakota C.R.*, 404 S.W.3d at 497.

physical, emotional, and educational needs. Thus, the court determined that staying in this environment would be in Martese's best interests. We agree with this conclusion and believe that removing Martese from this stable and predictable environment would be detrimental and harmful.

Further, whether the parent has maintained regular visitation or other contact with the child and whether a meaningful relationship has otherwise been established between the parent and the child are factors to be considered. Tenn. Code Ann. §§ 36-1-113(i)(3) & (i)(4). In this case, Mother was initially awarded supervised visitation with Martese after he was removed from her custody; however, this visitation was subsequently suspended for safety concerns. On the occasions when Mother was permitted visitation, she was late for and cancelled several appointments. Additionally, we note that Martese has been living with Petitioners for almost three years, a majority of his life, and he has had very limited contact with Mother throughout this time. Thus, we agree with the juvenile court's conclusion that a meaningful relationship has not been established between Martese and Mother.

Whether the parent has paid child support consistent with the child support guidelines is also a factor to be considered. Tenn. Code Ann. § 36-1-113(i)(9). The evidence at trial indicates that, although Mother sent Martese clothes and toys on a few occasions, she did not provide financial support to Martese while he was in Petitioners' custody. Thus, this factor also favors termination of Mother's parental rights.

Therefore, we affirm the juvenile court's ruling that termination of Mother's parental rights is in Martese's best interests.

### IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, Kelsey K.

_____
FRANK G. CLEMENT, JR., P.J., M.S.